**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

------------------------------X

TRACTEL INC.,                                    :                    Docket Number:

               Plaintiff,               :

               v.                          :                    **COMPLAINT**

AZ-TEC ERECTORS INC. and                 :
KINSALE INSURANCE COMPANY,

             Defendants.           :

------------------------------X

Plaintiff Tractel Inc. ("Plaintiff" or "Tractel"), by and through its attorneys, Pellis Law Group, LLP, for its Complaint against Defendants Az-Tec Erectors Inc. ("Az-Tec") and Kinsale Insurance Company ("Kinsale," and collectively with Az-Tec, "Defendants"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## Preliminary Statement

1.     This is an action in which Tractel seeks a declaration of its rights, *inter alia*, under a contract with Az-Tec and an insurance policy issued by Kinsale.

2.     This action arises out of the wrongful refusal of Defendants to defend and indemnify Tractel with respect to lawsuits filed against Tractel (and others) involving claims relating to the death of an individual on January 26, 2022, that occurred while that person was operating a system used for cleaning the exteriors of buildings.

3.     Tractel designed and manufactured the system at issue in the underlying lawsuits, and it entered into a subcontract agreement with Az-Tec to install the system.

4.     As part of the subcontract agreement, Az-Tec agreed to defend and indemnify Tractel against any claims related to Az-Tec's work under the subcontract.

5.      Az-Tec also agreed to name Tractel as an additional insured under its commercial general liability policy, which at the relevant time was issued by Kinsale.

6.      On multiple occasions, Tractel has demanded that Az-Tec defend and indemnify it with respect to the underlying lawsuits in which Tractel has been named.

7.      Tractel has also sought coverage (again, on multiple occasions) as an additional insured from Kinsale for the underlying lawsuits.

8.      To date, Az-Tec has failed to respond to Tractel's demands for indemnification under the subcontract, and Kinsale has failed to respond to Tractel's claims for insurance coverage.

9.      Tractel now seeks to recover the amounts it has paid for defense of the underlying lawsuits, secure Az-Tec's defense and indemnity obligations under the subcontract, and obtain coverage as an additional insured under the insurance policies that Kinsale issued to Az-Tec.

10.     Tractel additionally seeks to hold Kinsale liable for its various instances of bad faith insurer conduct and to recover all damages available to Tractel resulting therefrom.

## Jurisdiction

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of Massachusetts and Texas on the one hand, and citizens of Colorado, Arkansas, and Virginia on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## Venue

12.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

13.    Upon information and belief, the Defendants transacted business within this district, including, but not limited to, the purchase and delivery of insurance policies.

## Parties

14.    Tractel Inc. is a corporation that is incorporated in Massachusetts and has its principal place of business at 6300 West by Northwest Blvd, Suite 100, Houston, Texas 77040.

15.    Upon information and belief, Az-Tec Erectors Inc. is a corporation that is incorporated in Colorado and has its principal place of business at 8013 Routt Street, Arvada, Colorado 80005.

16.     Upon information and belief, Kinsale Insurance Company is a corporation that is incorporated in Arkansas and has its principal place of business at 2035 Maywill Street, Suite 100, Richmond, Virginia 23230.

## Facts

A.    **Tractel's Role in the Construction of the Villas**

17.    The facts underlying the instant dispute involve a construction project known as St. Teresa of Calcutta Villas located at 1400 Commercial Avenue, San Diego, California 92113 (the "Villas").

18.    The general contractor of the construction project, Level 10 Construction, LP ("Level 10"), contracted with Tractel to work on the project.

19.    Tractel specializes in providing working-at-height solutions.

20.    Its specific role in the project was to design and manufacture a monorail track system that could be utilized by workers to maintain and clean the exterior windows of the Villas (the "System").

21.     In this system, a monorail track attaches to the exterior of a building and a cart or basket attaches to a trolley that sits in the track. A person then traverses the exterior of the building horizontally in the cart to perform cleaning and maintenance work.

**B.    Tractel's Subcontract with Az-Tec to Install the System**

22.     Tractel contracted with Az-Tec to install the System at the Villas (the "Project").

23.     Az-Tec performed work on the Project for Tractel pursuant to a contract and a work authorization.

24.     The operative contract is the Master Subcontract Agreement by and between Tractel Ltd. and Aztec Erectors, Inc., dated December 10, 2009 (the "MSA"). (The MSA is attached hereto as Exhibit A).

25.     Tractel Ltd. and Tractel Inc. are both wholly owned subsidiaries of Tractel North America Inc.

26.     The MSA defines Az-Tec as the "Contractor." (Ex. A, MSA at p. 1).

27.     The MSA states that Az-Tec's work on specific projects for Tractel may be governed by work authorizations. To wit, "The Contractor and Tractel may execute project specific agreements ("Work Authorizations") incorporating and referencing this Agreement." (Ex. A, MSA at p. 1).

28.     The MSA requires Az-Tec to indemnify Tractel for any claims arising from work performed by Az-Tec pursuant to the MSA and/or a Work Authorization. Specifically, the "Indemnity" section of the MSA reads, in pertinent part, as follows:

> Contractor shall indemnify and save harmless Tractel North America and its subsidiaries … from and against any and all claims and demands on account of … injury to persons including death resulting therefrom, losses, damages, expenses (including attorneys' fees and investigation costs), payments, recoveries and judgments in connection therewith arising out of or caused in any manner by

> the acts or omissions of Contractor, its employees, agents, or subcontractors or the performance or failure to perform any Services under this agreement or the breach of any provision or obligation set forth herein by Contractor, or Contactor's employees, agents or subcontractors.

(Ex. A, MSA at p. 4).

29.    And the MSA requires Az-Tec to defend Tractel against "any and all" such actions as follows:

> Contractor shall at its own expense, defend any and all actions brought against Tractel based upon any of the foregoing and shall pay all attorneys and all other expenses, and promptly discharge any judgments, settlements or compromises arising therefrom.

(Ex. A, MSA at p. 4).

30.    The MSA also requires Az-Tec to comply with various obligations relating to insurance coverage, including, but not limited to, Az-Tec's obligation to name Tractel as an additional insured under its commercial general liability policy. Specifically, the MSA states:

> Prior to commencing the work and at any given time thereafter the Contractor [Az-Tec] shall provide to Tractel evidence of compliance with insurance policies for coverage noted below. Evidence of such coverage shall be presented to Tractel in a certificate of insurance naming Tractel North America and all its related subsidiaries as Additional Insured.

(Ex. A, MSA at p. 4).

31.    The MSA identifies the specific insurance coverage that Az-Tec is required to obtain:

> c)    Comprehensive Commercial General Liability Insurance in the minimum amount of $5,000,000 combined single limit covering both Bodily Injury and Property Damage including broad form contractual liability coverage for Contractor's indemnification as provided herein.

(Ex. A, MSA at p. 4).

32.    After identifying the required insurance coverage, the MSA again states that "Tractel North America and all of its related subsidiaries shall be named as Additional Insureds." (Ex. A, MSA at p 4).

33.    Finally, specifically with respect to commercial general liability insurance, the MSA states as follows:

> Contractor's [Az-Tec's] Commercial General Liability Insurance shall be primary, and any such insurance maintained by Tractel shall be secondary and non-contributory and excess over the Commercial General Liability Insurance to be maintained by contractor hereunder.

(Ex. A, MSA at p 4).

## C.    Tractel's Work Authorization with Az-Tec for the Project

34.    In addition to the MSA, Az-Tec's work on the Project was also performed pursuant to a work authorization.

35.    The operative work authorization is Work Authorization Number 8N15, dated October 26, 2020 (the "Work Authorization"). (The Work Authorization is attached hereto as Exhibit B).

36.    The Work Authorization specifically incorporates the terms and conditions of the MSA. (Ex. B, Work Authorization).

37.    The Work Authorization also states as follows with respect to the obligations assumed by Az-Tec:

> The subcontractor [Az-Tec] assumes toward Tractel all of the obligations, risks, responsibilities and liabilities that Tractel, by the Contract documents, has assumed toward the General Contractor/Owner and the subcontractor is bound to Tractel by those obligations in the same manner and to the same extent.

(Ex. B, Work Authorization).

38.     The "Project specific insurance" section of the Work Authorization refers to "COI," which is a common acronym for "certificate of insurance." (Ex. B, Work Authorization).

**D.     Az-Tec's Certificates of Insurance for the Project**

39.     Az-Tec provided two certificates of insurance ("COI") to Tractel (and others) for the Project.

40.     The first COI is dated February 5, 2021, and it provides information about Az-Tec's commercial general liability and excess liability insurance, among other things (the "First COI"). (The First COI is attached hereto as Exhibit C).

41.     The First COI indicates that Kinsale issued a commercial general liability insurance policy to Az-Tec bearing policy number 01000312315 for the policy period of August 7, 2020, to August 7, 2021 (the "Kinsale 2021 CGL Policy"). (Ex. C, First COI at p. 1).

42.     The First COI further indicates that the Kinsale 2021 CGL Policy has a $1,000,000 limit of liability per occurrence and a $2,000,000 general aggregate limit of liability per project. (Ex. C, First COI at p. 1).

43.     The First COI also indicates that Kinsale issued an excess liability insurance policy to Az-Tec bearing policy number 01000312155 for the policy period of August 7, 2020, to August 7, 2021 (the "Kinsale 2021 Excess Policy," and collectively with the Kinsale 2021 CGL Policy, the "Kinsale 2021 Policies"). (Ex. C, First COI at p. 1).

44.     The First COI further indicates that the Kinsale 2021 Excess Policy has a $5,000,000 per occurrence and general aggregate limit of liability. (Ex. C, First COI at p. 1).

45.     The "Description of Operations" section of the First COI refers to the Work Authorization governing the Project ("Tractel Job 8N15") and the general location of the Project (14th and Commercial, San Diego, CA). (Ex. C, First COI at p. 1).

46.    The "Description of Operations" section of the First COI also states that Tractel is

an additional insured under the Kinsale 2021 Policies as follows: "Tractel Ltd, Tractel Inc and its

affiliates … are an additional insured on the General Liability … per the attached

endorsements/forms." (Ex. C, First COI at p. 1).

47.    There are various endorsements attached to the First COI, one of which is the

"Additional Insured – Primary and Non-Contributory Endorsement."

48.    The Additional Insured – Primary and Non-Contributory Endorsement applies to

the Kinsale 2021 Policies, specifically the Commercial General Liability Coverage part and the

Products/Completed Operations Liability Coverage parts, and it states as follows:

> The insurance provided to Additional Insureds shall be excess with
> respect to any other valid and collectible insurance available to the
> Additional Insured unless the written contract specifically requires
> that this insurance apply on a primary and non-contributory basis, in
> which case this insurance shall be primary and non-contributory.

(Ex. C, First COI at p. 5).

49.    Also attached to the First COI is the "Additional Insured – Owners, Lessees or

Contractors – Scheduled Person or Organization" Endorsement, which applies to the

Commercial General Liability Coverage Part of the Kinsale 2021 Policies (the "Blanket

Additional Insured Endorsement").

50.     The Blanket Additional Insured Endorsement contains a Schedule that identifies

two categories of information— "Name of Additional Insured Person(s) or Organization(s)" and

"Location(s) of Covered Operations." (Ex. C, First COI at p. 7).

51.    The "Name of Additional Insured Person(s) or Organization(s)" category reads:

"Blanket, as required by written contract, executed prior to the start of work on the project." (Ex.

C, First COI at p. 7).

52.     And the "Location(s) of Covered Operations" reads: "Locations as required and specified by written contract, executed prior to the start of work on the project." (Ex. C, First COI at p. 7).

53.     In addition to the Schedule, the Blanket Additional Insured Endorsement states as follows:

> A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> > 1. Your acts or omissions; or
> >
> > 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

(Ex. C, First COI at p. 7) (emphasis in original).

54.     Additionally attached to the First COI is an endorsement titled "Additional Insured – Owners, Lessees or Contractors – Completed Operations," which applies to the Commercial General Liability Coverage Part and the Products/Completed Operations Liability Coverage Part of the Kinsale 2021 Policies (the "Completed Operations Additional Insured Endorsement"). (Ex. C, First COI at p. 9).

55.     The Completed Operations Additional Insured Endorsement also includes a Schedule that identifies two categories of information— "Name of Additional Insured Person(s) or Organization(s)" and "Location and Description of Completed Operations."

56.     Similar to the Schedule associated with the Blanket Additional Insured Endorsement, the "Name of Additional Insured Person(s) or Organization(s)" category refers to

blanket coverage as required by a written contract that is executed prior to the start of work on the project. (Ex. C, First COI at p. 9).

57.      And the "Location and Description of Completed Operations" category refers to locations as required by a written contract that is executed prior to the start of work on the project. (Ex. C, First COI at p. 9).

58.      Az-Tec also provided a second COI to Tractel (and others) for the Project.

59.      The second COI is dated August 6, 2021 (the "Second COI"). (The Second COI is attached hereto as Exhibit D).

60.      The Second COI is identical to the First COI, but for the policy periods of the commercial general liability and excess liability insurance policies. That is, the Second COI appears to reflect that the Kinsale 2021 Policies were renewed for a further annual term.

61.      The Second COI indicates that Kinsale issued a commercial general liability insurance policy to Az-Tec bearing policy number 01000312315 [sic][1] for the policy period of August 7, 2021, to August 7, 2022 (the "Kinsale 2022 CGL Policy"). (Ex. D, Second COI).

62.      The Second COI further indicates that the Kinsale 2022 CGL Policy has a $1,000,000 limit of liability per occurrence and a $2,000,000 general aggregate limit of liability per project. (Ex. D, Second COI).

63.      The Second COI also indicates that Kinsale issued an excess liability insurance policy to Az-Tec bearing policy number 01000312155 [sic][2] for the policy period of August 7,

---

[1] The First COI identifies the Kinsale 2021 CGL Policy as bearing policy number 01000312315, while the Second COI identifies the Kinsale 2022 CGL Policy with a policy number identical to that of the Kinsale 2021 CGL Policy. As explained further below, Az-Tec subsequently produced a document that correctly identifies the Kinsale 2022 CGL Policy as bearing policy number 01000312316.

[2] The same mistake was likely made with respect to the Kinsale 2022 Excess Policy. That is, a subsequent document correctly identifies the Kinsale 2022 Excess Policy as bearing policy number 01000312156.

2021, to August 7, 2022 (the "Kinsale 2022 Excess Policy," and collectively with the Kinsale 2022 CGL Policy, the "Kinsale 2022 Policies"). (Ex. D, Second COI).

64.    The Second COI further indicates that the Kinsale 2022 Excess Policy has a $5,000,000 per occurrence and general aggregate limit of liability. (Ex. D, Second COI).

65.    The "Description of Operations" section of the Second COI is identical to the same section of the First COI. (Ex. C, First COI at p. 1; Ex. D, Second COI).

66.    The Second COI did not have any endorsements attached to it.

67.    Upon information and belief, the Kinsale 2022 Policies are subject to the same or similar endorsements that were attached to the First COI.

**E.    The Incident and the Underlying Lawsuits**

68.    On January 26, 2022, Edi Guadalupe Cañedo Medina ("Medina") was utilizing the System to clean the exterior windows at the 12th floor of the Villas.

69.    As Medina moved laterally along the outside of the building, his basket slid off the end of the monorail track and he fell to his death (the "Incident").

70.    On or about September 22, 2022, two of Medina's minor children filed the following lawsuit against Tractel, Az-Tec, and others as a result of the Incident: *Canedo Jr. v. Level 10 Construction LP, et al.*, Case No. 37-2022-00040012-CU-PO-CTL (California Superior Court, San Diego County) (the "Canedo Jr. Lawsuit").

71.    And on or about October 7, 2022, an additional minor child of Medina and Medina's mother filed the following lawsuit against Tractel, Az-Tec, and others as a result of the Incident: *Ramirez v. Level 10 Construction LP, et al.*, Case No. 37-2022-00040969-CU-PO-CTL (California Superior Court, San Diego County) (the "Ramirez Lawsuit").

72.    The Canedo Jr. Lawsuit and the Ramirez Lawsuit were consolidated, and on or about April 10, 2023, a First Consolidated Complaint was filed against Tractel, Az-Tec, and others as a result of the Incident (the "Underlying Lawsuit"). (A copy of the Underlying Lawsuit is attached hereto as Exhibit E).

73.    The Underlying Lawsuit alleges that the Incident occurred because the System was not properly installed.

74.    Specifically, the Underlying Lawsuit alleges that the System did not contain an "end stop" at the end of the 12th floor monorail track.

**F.    Az-Tec's Discovery Responses in the Canedo Jr. Lawsuit**

75.    Az-Tec responded to discovery requests in the Canedo Jr. Lawsuit and identified its relevant insurance information related to the Incident.

76.    In Az-Tec's Responses to Plaintiffs' Form Interrogatories, Set One, Az-Tec identified the Kinsale 2022 CGL Policy and the Kinsale 2022 Excess Policy as providing coverage for the Incident. (A copy of Az-Tec's Responses to Plaintiffs' Form Interrogatories, Set One is attached hereto as Exhibit F).

77.    And in response to Interrogatory 4.1(f) – "whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company" – Az-Tec responded, "Not to our knowledge." (Ex. F, Az-Tec's Responses to Plaintiffs' Form Interrogatories, Set One at p. 3).

78.    In addition to the information set forth in the Second COI, Az-Tec's Response to Interrogatory 4.1 properly notes that the Kinsale 2022 CGL Policy bears policy number 01000312316, and the Kinsale 2022 Excess Policy bears policy number 01000312156.

79.    Az-Tec's Response to Interrogatory 4.1 also identifies the custodian of the

Kinsale 2022 Policies as CRC Commercial Solutions – Redondo Beach, California, 1815 Via El

Prado, Suite 401, Redondo Beach, California 90277.

80.    And in Az-Tec's Responses to Plaintiffs' Requests for Production, Set One, Az-

Tec produced the declarations pages of the Kinsale 2022 CGL Policy and the Kinsale 2022

Excess Policy. (A copy of Az-Tec's Responses to Plaintiffs' Requests for Production, Set One, is

attached hereto as Exhibit G).

**G.    Tractel's Indemnification Demands to Az-Tec**

81.    On multiple occasions, Tractel has demanded that Az-Tec indemnify it for the

Canedo Jr. Lawsuit, the Ramirez Lawsuit, and other costs relating to the Incident, however,

Az-Tec has utterly failed to respond to Tractel in any way whatsoever.

82.    On February 14, 2022, an insurance adjustor acting for Tractel sent a letter to

Az-Tec advising of its intent to tender to Az-Tec all claims related to the Incident, pursuant to

Az-Tec's contractual obligations (the "February 2022 Indemnification Demand").

83.    Az-Tec never responded to the February 2022 Indemnification Demand.

84.    On May 2, 2022, counsel for Tractel sent a letter to Az-Tec advising that Level

10, the general contractor on the Project, had made a demand on Tractel in connection with the

Incident and demanding that Az-Tec indemnify Tractel for the loss (the "May 2022

Indemnification Demand").

85.    Az-Tec never responded to the May 2022 Indemnification Demand.

86.    On February 8, 2023, counsel for Tractel sent a letter to Az-Tec demanding that it

defend and indemnify Tractel for loss related to the Incident, including the Canedo Jr. Lawsuit,

the Ramirez Lawsuit, and the defense of the general contractor Level 10 (the "February 2023

Indemnification Demand"). The February 2023 Indemnification Demand enclosed the MSA, the Work Authorization, the February 2022 Indemnification Demand, the May 2022 Indemnification Demand, the Canedo Jr. Lawsuit, and the Ramirez Lawsuit.

87.    Az-Tec never responded to the February 2023 Indemnification Demand.

88.    Az-Tec has failed to indemnify Tractel for defense costs it has incurred and arising from the Incident, including, but not limited to, the obligations assumed by Tractel with respect to the Project and the Underlying Lawsuit.

89.    Accordingly, Az-Tec has been and remains in breach of the MSA and the Work Authorization.

## H.    Tractel's Demands to Kinsale for Coverage as an Additional Insured

90.     On multiple occasions, Tractel has demanded that Kinsale provide it with coverage as an additional insured under the insurance policies that Kinsale issued to Az-Tec.

91.    On February 8, 2023, counsel for Tractel sent a letter to Kinsale demanding that it provide coverage to Tractel as an additional insured under the Kinsale 2021 Policies and/or the Kinsale 2022 Policies (the "February 2023 Coverage Demand Letter"). (The Kinsale 2021 Policies and the Kinsale 2022 Polices are collectively referred to as the "Kinsale Policies").

92.    The February 2023 Coverage Demand Letter explained that Tractel is an additional insured under the Kinsale Policies, advised of the Canedo Jr. Lawsuit and the Ramirez Lawsuit, and demanded that Kinsale confirm that it will provide coverage to Tractel.

93.    Kinsale never responded to the February 2023 Coverage Demand Letter.

94.    On March 31, 2023, counsel for Tractel e-mailed counsel for Az-Tec and specifically requested the contact information of the adjuster at Kinsale responsible for the Underlying Lawsuit.

14

95.     Kinsale has failed to provide coverage to Tractel for any claims relating to the

Incident, including, but not limited to, the Underlying Lawsuit.

96.     Accordingly, Kinsale has been and remains in breach of its obligations to Tractel.

**I.      Kinsale's Bad Faith Conduct**

97.     Implied in every contract is a covenant of good faith and fair dealing.

98.     Kinsale breached its implied covenant of good faith and fair dealing with Tractel

by withholding from Tractel benefits that Tractel was entitled to under the Kinsale Policies.

99.     By doing so, Kinsale did not act fairly and in good faith. Specifically, Kinsale

has:

(a)     Failed to acknowledge and act reasonably promptly upon communications

with respect to Tractel's claims arising under the Kinsale Policies;

(b)     Failed to adopt and implement reasonable standards for the prompt

investigation and processing of claims arising under the Kinsale Policies;

(c)     Not attempted in good faith to effectuate prompt, fair, and equitable

settlements of claims in which liability has become reasonably clear;

(d)     Compelled Tractel to institute litigation to recover amounts due under the

Kinsale Policies by offering substantially less (i.e., nothing) than the amounts that Tractel

will ultimately recover in this action;

(e)     Failed to settle claims promptly, where liability has become apparent,

under one portion of the insurance policy coverage in order to influence settlements

under other portions of the insurance policy coverage; and

15

(f)    Failed to provide promptly a reasonable explanation of the basis relied on, in relation to the facts or applicable law, for the implicit denial of Tractel's claim for coverage as an additional insured under the Kinsale Policies.

100.    Tractel is entitled to punitive damages as a result of Kinsale's conduct. Specifically, Kinsale has refused to respond to Tractel's claims for coverage as an additional insured under the Kinsale Policies for the claims related to the Underlying Lawsuit (among other things) and Kinsale has consequently failed to provide coverage to Tractel under the Kinsale Policies.

101.    Kinsale's failure to provide coverage to Tractel for the Underlying Lawsuit compromises the potential to resolve the Underlying Lawsuit.

102.    Due to Kinsale's willful and wrongful conduct, Tractel will hold Kinsale liable for any amounts that Tractel incurs in excess of the limit of liability of the Kinsale Policies.

**J.    Damages**

103.    Tractel has incurred and continues to incur damages as a result of the Incident.

104.    Tractel has incurred at least $127,000 in defense costs relating to the Underlying Lawsuit.

105.    Tractel has incurred at least $83,000 in costs relating to the general contractor's tender of its defense of the Underlying Lawsuit to Tractel.

106.    Tractel has incurred at least $150,000 in repair costs relating to the Incident.

## Count One – Declaratory Judgment
## As against Defendant Az-Tec Erectors Inc.

107.    Tractel repeats and realleges paragraphs 1 through 106 hereof, as if fully set forth herein.

108.    This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, to obtain a judicial determination of the rights and duties of Tractel and Az-Tec under the MSA and Work Authorization with respect to Tractel's claims for indemnification and coverage as an additional insured under the Kinsale Policies.

109.    A justiciable controversy exists between Tractel and Az-Tec such that the Court's declaration of rights will have a practical effect.

110.    Under the terms of the MSA and the Work Authorization, Az-Tec is contractually required to indemnify Tractel for all claims related to the Incident, including the Underlying Lawsuit and the general contractor's demands to Tractel.

111.    Az-Tec is obligated to "defend any and all actions brought against Tractel based upon any of the foregoing and shall pay all attorneys and all other expenses" requested by Tractel.

112.    However, Az-Tec has refused to respond to Tractel's multiple requests for indemnification pursuant to the MSA and the Work Authorization; therefore, Az-Tec has not indemnified Tractel for any claims related to the Incident.

113.    Tractel has suffered and continues to suffer a real and ongoing injury as a result of Az-Tec's improper refusal to indemnify Tractel for all claims relating to the Incident.

114.    Under the terms of the MSA and the Work Authorization, Az-Tec is also contractually required to name Tractel as an additional insured under its commercial general liability insurance policy such that Tractel would be provided coverage under the Kinsale Policies.

115.    However, Az-Tec has refused to respond to Tractel's multiple requests that it be provided coverage as an additional insured under the Kinsale Policies pursuant to the MSA and

the Work Authorization; therefore, Tractel has not been provided with additional insured coverage under the Kinsale Policies.

116.    Tractel has suffered and continues to suffer a real and ongoing injury as a result of Az-Tec's improper refusal to provide additional insured coverage to Tractel.

117.    A judicial determination is necessary and appropriate at this time to interpret a contract and determine Tractel's rights under the MSA and the Work Authorization and Az-Tec's duties and responsibilities under the MSA and the Work Authorization.

118.    Tractel seeks a judicial determination that:

(a)    The MSA and Work Authorization require Az-Tec to indemnify Tractel for all claims and costs related to the Incident, including Tractel's defense costs and expenses incurred in the Underlying Lawsuit, the general contractor's costs that have been tendered to Tractel, Tractel's repair costs, and all Tractel's attorneys' fees and all other expenses.

(b)    The MSA and Work Authorization require Az-Tec to name Tractel as an additional insured under the Kinsale Policies such that Tractel receives coverage as an additional insured under the Kinsale Policies for all claims related to the Incident.

(c)    Any other relief the Court deems just and proper.

## Count Two – Breach of Contract
## As against Defendant Az-Tec Erectors Inc.

119.    Tractel repeats and realleges paragraphs 1 through 118 hereof, as if fully set forth herein.

120.    Az-Tec entered into a Work Authorization with Tractel which was governed by the MSA.

121.    The MSA and the Work Authorization are binding contracts between Tractel and Az-Tec.

122.    Az-Tec specifically agreed to indemnify Tractel for any claims arising from its work on the Project.

123.    Az-Tec also agreed to assume toward Tractel all obligations, risk, responsibilities, and liabilities that Tractel assumed toward the general contractor and owner of the Project.

124.    Az-Tec further agreed to name Tractel as an additional insured under the Kinsale Policies so that Tractel would be provided with coverage as an additional insured for any claims resulting from the Project.

125.    Az-Tec has refused to indemnify Tractel for claims arising from the Incident, including the Underlying Lawsuit.

126.    Az-Tec has refused to indemnify Tractel for the general contractor's demand resulting from the Incident.

127.    Az-Tec has refused to name and provide coverage to Tractel as an additional insured under the Kinsale Policies.

128.    Az-Tec is in breach of its indemnity obligations as set forth in the MSA and the Work Authorization.

129.    Az-Tec is in breach of its obligations to name and provide coverage to Tractel as an additional insured under the Kinsale Policies.

130.    As a result of Az-Tec's breach of the MSA and the Work Authorization, Tractel has suffered at least $360,000 in damages as follows:

(a)    Tractel has incurred at least $127,000 in defense costs relating to the Underlying Lawsuit;

(b)    Tractel has incurred at least $83,000 in costs relating to the general

contractor's tender of its defense of the Underlying Lawsuit to Tractel; and

(c)    Tractel has incurred at least $150,000 in repair costs relating to the

Incident.

131.    Tractel seeks a judgment for $360,000 and any prejudgment interest on any

appropriate and applicable amounts as determined by the Court.

### Count Three – Declaratory Judgment
### As against Defendant Kinsale Insurance Company

132.    Tractel repeats and realleges paragraphs 1 through 131 hereof, as if fully set forth

herein.

133.    This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, to obtain

a judicial determination of the rights and duties of Tractel and Kinsale under the Kinsale Policies

with respect to Tractel's claims for coverage as an additional insured under the Kinsale Policies.

134.    A justiciable controversy exists between Tractel and Kinsale such that the Court's

declaration of rights will have a practical effect.

135.    Under the terms of the MSA and the Work Authorization and as set forth in the

First COI and the Second COI, Kinsale is contractually required to provide coverage to Tractel

as an additional insured under the Kinsale Policies for all claims related to the Incident, including

the Underlying Lawsuit and the general contractor's demands to Tractel.

136.    However, Kinsale has refused to respond to Tractel's multiple requests for

coverage; therefore, Kinsale has failed to provide additional insured coverage to Tractel for any

claims related to the Incident.

137.    Tractel has suffered and continues to suffer a real and ongoing injury as a result of

Kinsale's improper refusal to provide coverage to Tractel for any claims relating to the Incident.

138.    A judicial determination is necessary and appropriate at this time to interpret a contract and determine Tractel's rights under the MSA, the Work Authorization, the First COI, the Second COI, and the Kinsale Policies and Kinsale's duties and responsibilities under the MSA, the Work Authorization, the First COI, the Second COI, and the Kinsale Policies.

139.    Tractel seeks a judicial determination that:

(a)    Kinsale is required to provide coverage to Tractel as an additional insured under the Kinsale Policies for all claims related to the Incident;

(b)    Kinsale is required to reimburse Tractel for all costs and expenses incurred to date for all claims related to the Incident, including, but not limited to, defense costs and expenses incurred by Tractel in the Underlying Lawsuit and costs incurred by Tractel relating to the general contractor's tender of its defense of the Underlying Law to Tractel; and

(c)    Any other relief the Court deems just and proper.

## Count Four – Breach of Contract
## As against Defendant Kinsale Insurance Company

140.    Tractel repeats and realleges paragraphs 1 through 139 hereof, as if fully set forth herein.

141.    Az-Tec entered into a Work Authorization with Tractel which was governed by the MSA.

142.    The MSA and the Work Authorization are binding contracts between Tractel and Az-Tec.

143.    Az-Tec specifically agreed to name Tractel as an additional insured under the Kinsale Policies so that Tractel would be provided with coverage as an additional insured for any claims resulting from the Project.

21

144.    Az-Tec provided Tractel with the First COI and the Second COI.

145.    Attached to the First COI is the Blanket Additional Insured Endorsement.

146.    The Blanket Additional Insured Endorsement contains a Schedule that identifies two categories of information— "Name of Additional Insured Person(s) or Organization(s)" and "Location(s) of Covered Operations." (Ex. C, First COI at p. 7).

147.    The "Name of Additional Insured Person(s) or Organization(s)" category reads: "Blanket, as required by written contract, executed prior to the start of work on the project." (Ex. C, First COI at p. 7).

148.    The MSA required Az-Tec to name Tractel as an additional insured and the MSA was executed prior to the start of work on the Project.

149.    And the "Location(s) of Covered Operations" reads: "Locations as required and specified by written contract, executed prior to the start of work on the project." (Ex. C, First COI at p. 7).

150.    The Work Authorization specified the location of the Project, and it was executed prior to the start of work on the Project.

151.    In addition to the Schedule, the Blanket Additional Insured Endorsement states as follows:

> A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
>
> 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

(Ex. C, First COI at p. 7) (emphasis in original).

152.     Additionally attached to the First COI is the Completed Operations Additional

Insured Endorsement.

153.     The Completed Operations Additional Insured Endorsement also includes a

Schedule that identifies two categories of information— "Name of Additional Insured Person(s)

or Organization(s)" and "Location and Description of Completed Operations."

154.     Similar to the Schedule associated with the Blanket Additional Insured

Endorsement, the "Name of Additional Insured Person(s) or Organization(s)" category refers to

blanket coverage as required by a written contract that is executed prior to the start of work on

the project. (Ex. C, First COI at p. 9).

155.     Again, the MSA required Az-Tec to name Tractel as an additional insured and the

MSA was executed prior to the start of work on the Project.

156.     The "Location and Description of Completed Operations" category refers to

locations as required by a written contract that is executed prior to the start of work on the

project. (Ex. C, First COI at p. 9).

157.     The Work Authorization specified the location of the Project, and it was executed

prior to the start of work on the Project.

158.     The Second COI did not have any endorsements attached to it.

159.     Upon information and belief, the Kinsale 2022 Policies are subject to the same or

similar endorsements that were attached to the First COI.

160.     As set forth in the various endorsements described above, the Kinsale Policies

provide additional insured coverage to Tractel.

161.    Kinsale has refused to provide coverage to Tractel as an additional insured under the Kinsale Policies.

162.    Kinsale is in breach of its obligations under the Kinsale Policies.

163.    As a result of Kinsale's breach of the Kinsale Policies, Tractel has suffered at least $210,000 in damages as follows:

(a)    Tractel has incurred at least $127,000 in defense costs relating to the Underlying Lawsuit; and

(b)    Tractel has incurred at least $83,000 in costs relating to the general contractor's tender of its defense of the Underlying Lawsuit to Tractel.

164.    Tractel seeks a judgment for $210,000 and any prejudgment interest on any appropriate and applicable amounts as determined by the Court.

## Count Five
## Breach of the Implied Covenant of Good Faith and Fair Dealing
## As against Defendant Kinsale Insurance Company

165.    Tractel repeats and realleges paragraphs 1 through 164 hereof, as if fully set forth herein.

166.    Az-Tec entered into a Work Authorization with Tractel which was governed by the MSA.

167.    The MSA and the Work Authorization are binding contracts between Tractel and Az-Tec.

168.    Az-Tec specifically agreed to name Tractel as an additional insured under the Kinsale Policies so that Tractel would be provided with coverage as an additional insured for any claims resulting from the Project.

169.    Az-Tec provided Tractel with the First COI and the Second COI.

170.     The First COI contains endorsements that indicate the Kinsale Policies were modified to provide additional insurance coverage to Tractel under the Kinsale Policies' Commercial General Liability Coverage part and the Products/Completed Operations Liability Coverage part.

171.     Attached to the First COI is the Blanket Additional Insured Endorsement.

172.     The Second COI did not have any endorsements attached to it.

173.     Upon information and belief, the Kinsale 2022 Policies are subject to the same or similar endorsements that were attached to the First COI.

174.     The Kinsale Policies provide additional insured coverage to Tractel for claims arising from the Incident.

175.     Tractel fulfilled its obligations under the Kinsale Policies.

176.     Tractel has performed conditions precedent that Tractel is required to perform under the Kinsale Policies.

177.     Implied in every contract is a covenant of good faith and fair dealing. Tractel is informed and believes and on that basis herein alleges that Kinsale breached its implied covenant of good faith and fair dealing with Tractel by withholding from Tractel benefits that Tractel was entitled to under the Kinsale Policies.

178.     By doing so, Kinsale did not act fairly and in good faith. Specifically, Kinsale has:

     a.   Failed to acknowledge and act reasonably promptly upon communications with respect to Tractel's claims arising under the Kinsale Policies;

     b.   Failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the Kinsale Policies;

    c.   Not attempted in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

    d.   Compelled Tractel to institute litigation to recover amounts due under the Kinsale Policies by offering substantially less (i.e., nothing) than the amounts that Tractel will ultimately recover in this action;

    e.   Failed to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; and

    f.   Failed to provide promptly a reasonable explanation of the basis relied on, in relation to the facts or applicable law, for the implicit denial of Tractel's claim for coverage as an additional insured under the Kinsale Policies.

179.    Tractel is entitled to punitive damages as a result of Kinsale's conduct. Specifically, Kinsale has refused to respond to Tractel's claims for coverage as an additional insured under the Kinsale Policies for the claims related to the Underlying Lawsuit (among other things), and Kinsale has consequently failed to provide coverage to Tractel under the Kinsale Policies.

180.    Kinsale's failure to provide coverage to Tractel for the Underlying Lawsuit compromises the potential to resolve the Underlying Lawsuit.

181.    Due to Kinsale's willful and wrongful conduct, Tractel will hold Kinsale liable for any amounts that Tractel incurs in excess of the limit of liability of the Kinsale Policies.

182.    Pursuant to Kinsale's denial of Tractel's claim in bad faith, Tractel is entitled to recover its attorneys' fees and costs incurred herein.

183.    Tractel prays for a judgment against Kinsale as follows:

a.  For punitive damages in an amount to be determined according to proof;

b.  For an award of prejudgment interest on the said sum at the statutory rate from February 14, 2022 to the date of judgment herein;

c.  For an award of post-judgment interest for the maximum amount allowed by law;

d.  For an award of costs;

e.  For an award of reasonable attorneys' fees; and

f.  For any and all other relief the Court deems just and proper.

      **WHEREFORE**, Plaintiff Tractel Inc. respectfully requests judgment as follows:

      A.     On Count One, declaring that the MSA and the Work Authorization require Az-Tec to indemnify Tractel for all claims arising from the Incident, and further, that they require Az-Tec to name Tractel as an additional insured under the Kinsale Policies such that Tractel receives coverage as an additional insured under the Kinsale Policies for all claims related to the Incident.

      B.     On Count Two, awarding damages as against Az-Tec in an amount to be determined at trial, but in no event less than $360,000, plus interest and costs.

      C.     On Count Three, declaring that Kinsale owes coverage to Tractel as an additional insured under the Kinsale Policies for all claims arising from the Incident.

      D.     On Count Four, awarding damages as against Kinsale in an amount to be determined at trial, but in no event less than $210,000, plus interest and costs.

      E.     On Count Five, awarding damages as against Kinsale in an amount to be determined at proof including punitive damages, prejudgment interest, post-judgment interest, costs, and reasonable attorneys' fees.

      F.     Granting Tractel such other and further relief as the Court deems just and proper.

Respectfully submitted,

PELLIS LAW GROUP, LLP


Dated: July 07, 2023                    By: _____

Joseph L. Pellis II
Michael J. Tenuto
Pellis Law Group, LLP
901 Warrenville Road, Suite 205
Lisle, IL 60432
Office: +1 (630) 442-5500
jpellis@pellislaw.com
mtenuto@pellislaw.com

*and*

Joseph E. Hopkins
PELLIS LAW GROUP, LLP
37 North Broadway, Suite 1
Nyack, NY 10960
Office: +1 (845) 535-3939
jhopkins@pellislaw.com

*Attorneys for Plaintiff Tractel Inc.*